IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil No. 5:18-cv-00065-RJC

| TINA MARIE JOINES, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 9), Defendant's Motion for Summary Judgment, (Doc. No. 11), and Plaintiff's Consent Motion for Second Extension of Time, (Doc. No. 8). The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Tina Marie Joines ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Disability Insurance under Title II of the Social Security Act ("SSA") on January 26, 2015. (Doc. Nos. 6 to 6-1: Administrative Record ("Tr.") at 169.) Her application was denied first on May 18, 2015, (Tr. 94), and upon reconsideration on September 18, 2015, (Tr. 90). Plaintiff timely filed a request for a hearing on October 27, 2015, (Tr. 111), and an administrative hearing was held by an administrative law

judge ("ALJ") on March 6, 2017, (Tr. 131). Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 18–27.) Plaintiff requested a review of the ALJ's decision, but on February 22, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i) and 223(d) of the SSA. (Tr. 18.) To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on October 26, 2013 due to physical and mental impairments. (Tr. 169.)

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 27.) In reaching her conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets

---

[1] Under the SSA, 42 U.S.C. § 301 et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 24–25.) In reaching her decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that Plaintiff suffered from severe physical impairments,[2] and that Plaintiff's impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 20–22.) Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff "has the [RFC] to perform light work . . . except pushing and pulling with the left upper extremity must be limited to frequently. In addition, within the

---

[2] The severe impairments the ALJ determined Plaintiff suffered from were seizures, migraines, colitis, and lumbar disc herniation. (Tr. 20.)

3

assigned work area, there must be less than occasional (seldom or rare) exposure to hazards including machinery and unprotected heights." (Tr. 22.)

Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could perform her past work as a cashier. (Tr. 24–25.) To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform her past work as a cashier as generally performed. (Tr. 60.) Nevertheless, the ALJ proceeded to make alternative findings under the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 25–27.) The VE testified that Plaintiff could perform three jobs that existed in significant numbers in the national economy: "assembler,"[3] "inspector,"[4] and "grader."[5] (Tr. 26.) According to the DOT, all of these jobs involve "light work." The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 25–27.)

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty

---

[3] DOT 754.687-014, 1991 WL 680376.
[4] DOT 739.687-038, 1991 WL 680182.
[5] DOT 526.687-010, 1991 WL 674513.

in her determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g), 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again or substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence.

Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

III. DISCUSSION

Plaintiff alleges that the ALJ made two errors: (1) the ALJ failed to properly account for the vocationally limiting effects of Plaintiff's headaches in assessing Plaintiff's RFC; and (2) the ALJ failed to evaluate whether Plaintiff's migraines equaled listing 11.02B. In addition, Plaintiff requests a new hearing before a different ALJ on the ground that the ALJ presiding over her claim was not constitutionally appointed. The Court disagrees with Plaintiff's allegations of error and concludes Plaintiff is not entitled to a new hearing.

### A. Substantial evidence supports the ALJ's conclusions regarding Plaintiff's RFC.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly account for the limiting effects of Plaintiff's headaches in assessing Plaintiff's RFC. The Court finds that substantial evidence supports the ALJ's conclusions regarding Plaintiff's RFC.

In determining a claimant's RFC, "the claimant is entitled to have the ALJ 'consider all [her] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.'" Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 255 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1529(a)). "When the medical signs or laboratory

6

findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (first, third, fourth, and fifth alterations in original) (quoting 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1)). "In so doing, the ALJ must 'assess the credibility of the claimant's statements about symptoms and their functional effects.'" Brown, 873 F.3d at 255 (quoting Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017)). Moreover, "the finding at step two that Plaintiff has a severe impairment . . . does not require the ALJ to include any limitations from such impairment when stating the Plaintiff's RFC." Carver v. Colvin, No. 1:13-cv-13, 2015 WL 4077466, at *4 (M.D.N.C. July 6, 2015). "The determination of a 'severe' impairment at step two of the sequential evaluation process is a *de minimis* test, designed to weed out unmeritorious claims. A finding of *de minimis* limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four." Hughes v. Astrue, No. 1:09-cv-459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (citation omitted).

Here, Plaintiff argues that her testimony establishes that she continues to have severe headaches thirteen to fourteen days each month during which she must remain in bed. The ALJ, however, found Plaintiff's testimony regarding her symptoms to be "not entirely consistent with the medical evidence and other evidence

7

in the record." (Tr. 23.) The ALJ cited to evidence that in May 2014, Plaintiff saw a headache specialist and reported some improvement in her headaches, and her neurological examination was normal. (Tr. 23.) The ALJ also noted that Plaintiff was treated with Botox injections and reported relief after treatment, even though Plaintiff still had daily headaches. (Tr. 23.) The ALJ cited to evidence that in November 2014, Plaintiff underwent a SPG block and immediately reported decreased pain. (Tr. 23.) The ALJ noted that Plaintiff underwent another SPG block in December 2014 and reported being headache free for one to two weeks. (Tr. 23.) In addition, the ALJ cited to evidence that following an MRI in May 2015 that identified a Chiari I malformation, Plaintiff continued with regular Botox injections to treat her headaches and reported doing better in March 2016. (Tr. 23.) The ALJ then explained that "[t]he overall improvement in symptoms is inconsistent with allegations of disabling headaches." (Tr. 23.) The ALJ concluded that "the residual limitations from the . . . headaches are accommodated by an exertional limitation to the light range of work." (Tr. 24.) Therefore, the Court finds that the ALJ pointed to substantial evidence to support her conclusion that Plaintiff's allegations of symptom severity and limitations are not entirely consistent with the medical evidence and other evidence in the record. Although Plaintiff argues that the evidence directs a different conclusion, "it is not our province to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ.]" Radford, 734 F.3d at 296 (quotation marks omitted) (alteration in original). Accordingly, the Court finds no reversible error on this ground.

### B. The ALJ did not err in failing to consider the applicability of Listing 11.02B.

Plaintiff next argues that the ALJ erred at step three in failing to consider whether Plaintiff's migraine disorder medically equaled Listing 11.02B. Listing 11.02B pertains to epileptic dyscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 11.02. Dyscognitive seizures are

> characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure.

Id. Sec. 11.00H1b.

"The Social Security Administration has promulgated regulations containing listings of physical and mental impairments which, if met, are conclusive on the issue of disability." Radford, 734 F.3d at 291 (quotation marks omitted). "Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing." Gore v. Berryhill, No. 7:15-cv-00231, 2017 WL 961810, at *7 (E.D.N.C. Feb. 23, 2017), adopted by 2017 WL 980278 (E.D.N.C. Mar. 10, 2017). "An ALJ is not required to identify and discuss every possible listing . . . ." Ezzell v. Berryhill, 688 F. App'x 199, 200 (4th Cir. 2017). "[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is ample evidence in the record to support a determination that an impairment meets or medically equals a listing." Kelly v. Astrue, No. 5:08-cv-289, 2009 WL

9

1346241, at *5 (E.D.N.C. May 12, 2009). "For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original). "Thus, where a claimant fails to articulate why her medical impairments do, in fact, meet all of the elements of a given listed impairment, she fails to meet this burden." Gore, 2017 WL 961810, at *7 (quotation marks omitted).

Here, Plaintiff makes the conclusory argument that her migraine disorder medically equals Listing 11.02B; however, Plaintiff fails to explain how her migraine disorder medically equals the listing—that is, how her migraine disorder equals in severity to all the criteria for Listing 11.02B. Plaintiff points to SSA Q&A 09-036 in arguing that the Court is to use this guidance in determining whether Plaintiff's migraines medically equal the listing; however, the guidance refers to Listing 11.03, not Listing 11.02B. Listing 11.03 no longer exists, and Plaintiff fails to address how former Listing 11.03 compares to Listing 11.02B. In short, Plaintiff has failed to "articulate why her medical impairments do, in fact, meet all of the elements of" Listing 11.02B. Id. Accordingly, the Court finds no reversible error in the ALJ's failure to consider Listing 11.02B.

### C. Plaintiff is not entitled to a new hearing under Lucia.

Plaintiff requests a new hearing before a different ALJ on the ground that the ALJ presiding over her claim was not constitutionally appointed. In Lucia v. SEC,

138 S. Ct. 2044, 2055 (2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. However, Lucia elucidated that, in the context of Appointments-Clause challenges, only "one who makes a timely challenge" is entitled to relief. Lucia, 138 S. Ct. at 2055 (quoting Ryder v. United States, 515 U.S. 177, 182–83 (1995)). In Lucia, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. Id. To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings. See, e.g., United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) (holding that parties may not wait until they are in court to challenge agency appointments); see also Elgin v. Dep't of Treasury, 567 U.S. 1, 23 (2012) (requiring the plaintiff to exhaust her constitutional claim before seeking review in federal court). Because Plaintiff failed to timely raise her Appointments Clause claim, it has been forfeited, and no remand is necessary on that basis. Meadows v. Berryhill, No. 7:18-cv-17, 2019 WL 938880, at *2 (E.D.N.C. Feb. 25, 2019); Shipman v. Berryhill, No. 1:17-cv-00309, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019); Britt v. Berryhill, No. 1:18-cv-00030, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (holding that the plaintiff forfeits issues not raised before the ALJ or Appeals Council).

## IV. CONCLUSION

In sum, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied the correct legal standards.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**;

3. Plaintiff's Consent Motion for Second Extension of Time, (Doc. No. 8), is **DENIED as moot**; and

4. The Clerk of Court is directed to close this case.

Signed: September 4, 2019

Robert J. Conrad, Jr.
United States District Judge